**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Devin Andrich,<br><br>               Plaintiff,<br><br>v.<br><br>Allister Adel, et al.,<br><br>               Defendants. | No. CV-20-01237-PHX-GMS (MTM)<br><br>**ORDER** |

Before the Court are Defendants State Bar of Arizona and Stacy Lynn Shuman's ("SBA Defendants") Request for Judicial Notice (Doc. 42) and Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 43).[1] Also before the Court is Maricopa County Defendants' Motion to Dismiss the Second Amended Complaint. (Doc. 66.) For the reasons set forth below, Defendants' motions are granted, and SBA Defendants' Motion for Judicial Notice is denied as moot.[2]

**BACKGROUND**

Although Plaintiff alleges many irrelevant facts in his complaint, this case is premised on an allegedly deficient investigation by the State Bar of Arizona ("SBA") and

---

[1] The parties stipulated that the SBA Defendants' Motion to Dismiss the First Amended Complaint would be construed as a motion to dismiss the Second Amended Complaint. (Doc. 59); (Doc. 60).

[2] The Defendants' request for oral argument is denied because the parties have had an adequate opportunity to discuss the law and evidence and oral argument will not aid the Court's decision. *See Lake at Las Vegas Invrs. Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991).

Maricopa County law enforcement and prosecutors. Plaintiff Devin Andrich ("Plaintiff") is a disbarred attorney. He alleges that his former clients, Jerome and Lisa Meyers ("Meyers"), agreed to store his personal property during the pendency of criminal proceedings against him. The Meyers later filed a bar complaint against Plaintiff, and Plaintiff alleges that they refused to relinquish possession of his property, including his computer containing client files. When they did release the computer, Plaintiff alleges the Meyers had confiscated the hard drive containing his data. Plaintiff asserts that the Meyers' attorneys at Singer Pistiner, P.C. either possess the files or know of their location.

Plaintiff sues three entities, Maricopa County, the State of Arizona, and the State Bar of Arizona, and nine individuals including law enforcement officers or investigators and others.  These Defendants include: Allister Adel, Mark Brnovich, Jeffrey Duvendack, Michael Gingold, Kristin Nordeen, Heather Kirka, Jose Garcia, David Beck, and Stacy Lynn Shuman. He also includes allegations against Robert Singer, counsel at Singer Pistiner, P.C., and husband of Deputy Maricopa County Attorney Heather Kirka. Plaintiff sues Defendant Kirka because she "made it seem as if [she] was acting in an official capacity on behalf of Defendant Maricopa County when assisting Meyers, Singer and Pistiner with concealing the whereabouts of Plaintiff's attorney-client files." (Doc. 64 at 7.) Plaintiff further specifies that Defendants SBA and Shuman are sued "only in the capacity of investigators retained by Maricopa County. . . and not [as] prosecutors in any disciplinary proceeding." *Id.* He likewise sues Gingold, Duvendack, Nordeen, Garcia, and Beck as "agents or employees [sic] Maricopa County . . . at the time of events complained herein." *Id.* And he further sues the Maricopa County Attorney Allister Adel, and the Arizona Attorney General Mark Brnovich as "causing the deprivation of Plaintiff's rights under 42 U.S.C. § 1983." *Id.* at 6.

Plaintiff asserts that he notified both the SBA and Maricopa County law enforcement and prosecutors of the alleged theft. He alleges that the Defendants are allowing Singer Pistiner P.C. to remain in possession of his client files and have instructed other state and county Defendants not to obtain search warrants for his property. Plaintiff

claims that, as a result, he was unable to respond to Meyers' bar charge and was unable to comply with the orders of the Disciplinary Judge which require him to return his clients' files to them. He further alleges he is obstructed in an unspecified way from fulfilling the terms of his plea agreement and probation conditions. Plaintiff claims that, while he is not attempting to call into question any of the state court proceedings against him through this lawsuit, the alleged failures of the Defendants to investigate and prosecute others rendered his Petition for Post-Conviction Relief incomplete and resulted in its ultimate denial. He claims that the same failures from Defendants are frustrating his ability to file a "robust petition for writ of habeas corpus." (Doc. 64 at 2.)

## DISCUSSION

### I. Legal Standards

#### a. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for lack of subject matter jurisdiction. "The party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092 (9th Cir. 1990) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)). Federal courts "possess only that power authorized by Constitution and statute," and therefore "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). In effect, the court presumes lack of jurisdiction until the plaintiff proves otherwise. *See id.*

#### b. Rule 12(b)(6)

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise the right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When analyzing a complaint for failure to state a claim, "allegations of material fact are taken as true and construed in the light most favorable to the non-moving party." *Smith v. Jackson*, 84 F.3d 1213, 1217

(9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

## II. Analysis

### a. Eleventh Amendment Immunity

#### i. Legal Standard

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Beentjes v. Placer Cnty. Air Pollution Control Dist.*, 397 F.3d 775, 777 (9th Cir. 2005) (quoting *Bd. of Trs. of Univ. of Ala. v. Garret*, 531 U.S. 356, 363 (2001)).

#### ii. The State of Arizona

First, Plaintiff may not seek damages against the State of Arizona and Defendants employed by the State sued in their official capacities. The State is immune from suit under the Eleventh Amendment. "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment. . . . [T]his principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 121 (1984); *see Jackson v. Arizona*, 885 F.2d 639, 641 (9th Cir. 1989) (dismissing prisoner's § 1983 suit against the State of Arizona as legally frivolous), *superseded by statute on other grounds in Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *see also In re Jackson*, 184 F.3d 1046, 1048 (9th Cir. 1999) ("Eleventh Amendment sovereign immunity limits the jurisdiction of the federal courts and can be raised at any time during judicial proceedings or by the court sua sponte."). The State as a Defendant is, therefore, dismissed.

### iii. The State Bar of Arizona

"The Eleventh Amendment bars suits which seek either damages or injunctive relief against a state, an 'arm of the state,' its instrumentalities, or its agencies." *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (quoting *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1422–23 (9th Cir. 1991)). "To determine whether a governmental agency is an arm of the state," courts examine five factors: "whether a money judgment would be satisfied out of state funds, whether the entity performs central governmental functions, whether the entity may sue or be sued, whether the entity has the power to take property in its own name or only the name of the state, and the corporate status of the entity." *Mitchell v. L.A. Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir. 1988). "To determine these factors, the court looks to the way state law treats the entity." *Id.*

Here, the first factor, whether a money judgment would be satisfied out of state funds, weighs slightly against finding the SBA an arm of the state. In accordance with Arizona Supreme Court Rule 32(d), the SBA fixes and collects fees through its treasury. Ariz. Sup. Ct. R. 32(d)(1). The SBA's board is vested with the power to "[a]pprove budgets and make appropriations and disbursements from funds of the State Bar to pay expenses necessary for carrying out its functions." Ariz. Sup. Ct. R. 32(d)(3). Nonetheless, the Arizona Supreme Court retains oversight on the SBA's expenditures—each year, a statement of the SBA's expenditures must be prepared and transmitted to the Chief Justice of the Arizona Supreme Court. Ariz. Sup. Ct. R. 32(d)(7).

The second factor, whether the entity performs central government functions, weighs heavily in favor of finding that the SBA is an arm of the state. The SBA was created by the Arizona Supreme Court, pursuant to Arizona Supreme Court Rule 32(a), which explains: "The Supreme Court of Arizona maintains under its direction and control a corporate organization known as the State Bar of Arizona." *See Scheehle v. Justices of the Sup. Ct. of the State of Ariz.*, 120 P.3d 1092, 1100 (Ariz. 2005) ("By virtue of our constitutional power over attorneys as officers of the court, this Court created the State Bar of Arizona."). The Arizona Supreme Court thus defines the SBA's duties, obligations, and

goals and every lawyer practicing in the State of Arizona must be a member of the SBA. *See Bates v. State Bar of Ariz.*, 433 U.S. 350, 361 (1977) ("Although the State Bar plays a part in the enforcement of the rules, its role is completely defined by the court; the appellee acts as the agent of the court under its continuous supervision.").

The parties do not brief the remaining *Mitchell* factors, but this Court has recently considered them as applied to the SBA in another matter:

> [Plaintiff] argues the third factor cuts in his favor because the SBA "may sue and be sued." (Doc. 23 at 12-13.) But this argument is based on an earlier version of Rule 32. Before 2017, Rule 32 included a provision allowing the SBA to sue and be sued. 2015 Ariz. Sup. Ct. R. 32(a). An amendment, effective January 1, 2017, removed that language. 2016 Ariz. Sup. Ct. R. 32. Additionally, under Arizona law, a state agency is "not liable for acts and omissions of its employees constituting ... [t]he exercise of an administrative function involving the determination of fundamental governmental policy, and "[t]he determination of a fundamental governmental policy ... include[s] ... [t]he licensing and regulation of any profession or occupation." A.R.S. § 12-820.01(A)(2), (B)(3). Thus, the third factor cuts in favor of classifying the SBA as an arm of the state.
>
> The fourth factor ("whether the entity has the power to take property in its own name or only in the name of the state") also weighs in favor of such a classification. [Plaintiff] argues the SBA "may enter into contracts and acquire, hold, encumber, dispose of and deal in and with real and personal property." (Doc. 23 at 12-13.) But again, [Plaintiff] bases this argument on a now-obsolete version of Rule 32. The January 2017 amendment removed this language.
>
> The fifth factor ("the corporate status of the entity") weighs against a finding that the SBA is an arm of the state because the SBA is a corporation. Ariz. Sup. Ct. R. 32(a) ("The Supreme Court of Arizona maintains under its direction and control a corporate organization known as the [SBA].").

*Fitzhugh v. Miller*, No. CV-19-04632-PHX-DWL, 2020 WL 1640495, at *6 (D. Ariz. Apr. 2, 2020).

Ultimately, although the SBA has independent features, it is most properly understood as an arm of the state. Indeed, on balance, the State treats the SBA as an arm by retaining a significant degree of control over the organization. *See id.* This conclusion

is consistent with the findings of other courts in the State and the Ninth Circuit. *See, e.g., Breck v. Doyle*, 2019 WL 6048847, at *2 (9th Cir. 2019) ("Eleventh Amendment immunity extends beyond the state itself. . . . We have previously recognized that both the Nevada Supreme Court and the [State Bar of Nevada] are arms of the State of Nevada, and so are immune from § 1983 damages claims."); *Hirsh v. Justices of the Sup. Ct. of the State of Cal.*, 67 F.3d 708, 715 (9th Cir. 1995) ("The Eleventh Amendment's grant of sovereign immunity bars monetary relief from state agencies such as California's Bar Association and Bar Court."); *O'Connor v. State of Nev.*, 686 F.2d 749, 750 (9th Cir. 1982) ("The district court reasoned that the state bar is the investigative arm of the Supreme Court of Nevada, charged with investigating and disciplining the legal profession of the state, and as such an agency, it too is immune from suit in federal court under the eleventh amendment. We agree.") (internal citation omitted); *Strojnik v. State Bar of Ariz.*, 446 F. Supp. 3d 566, 573 (D. Ariz. 2020) ("Arizona state courts and courts in this District have definitively held that the State Bar is an arm of the Arizona Supreme Court, and therefore, the State Bar is immune from suit under the Eleventh Amendment.") (internal citations omitted); *Drummond v. Stahl*, 127 Ariz. 122, 126, 618 P.2d 616, 620 (Ct. App. 1980) ("[P]ublic policy and legal precedent compel us to adopt the position that there is an absolute privilege extended to anyone who files a complaint with the State Bar alleging unethical conduct by an attorney. The State Bar of Arizona is an arm of the Arizona Supreme Court."). Accordingly, Plaintiff's claims against the SBA must be dismissed.[3]

---

[3] Plaintiff sues Defendant Shuman in her "individual and supervisory capacities." (Doc. 64 at 1.) However, Plaintiff also asserts Defendant Shuman is sued only in her capacity as an "investigator[] retained by Maricopa County in the *State v. Andrich* case and not as [a] prosecutor[] in any disciplinary proceeding." To the extent this allegation is a factual allegation, it does not contain sufficient detail to be plausible. To the extent it is a legal assertion, it is simply wrong and need not be accepted as true. Plaintiff's assertion that *Ex Parte Young* supports his claim against Defendant Shuman is unsupported. He offers no explanation for how her conduct constitutes an alleged violation of federal law which entitles him to prospective injunctive relief. To the extent that his claims assume the alleged continued theft of his property constitute these violations, Plaintiff has not stated a federal claim for the reasons discussed below. Therefore, to the extent that Plaintiff sues Defendant Shuman in her official capacity for monetary damages, the claims are barred by the Eleventh Amendment.

### b. Failure to State a § 1983 Claim

Even if Plaintiff were to overcome the above deficiencies, he has failed to state a § 1983 claim. To the extent it is comprehensible, Plaintiff's claim against Defendants appears be premised upon their failure to investigate the theft of his property, recover the files he alleges were stolen in that theft, and prosecute those he alleges are responsible for the conversion. Yet "[t]he police have no affirmative obligation to investigate a crime in a particular way or to protect one citizen from another even when one citizen deprives the other of liberty of property." *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994); *see, e.g.*, *Ferguson v. Cal. Dep't of Corr.*, No. 2:06-CV-01165 CAS, 2014 WL 5602368, at *3 (E.D. Cal. Nov. 3, 2014) ("[C]ourts have frequently found section 1983 claims inadequate where the plaintiff's alleged deprivation of rights rests solely on an interference with the filing or investigation of a criminal complaint."). Because the Defendants owe no constitutional or federal statutory duty to Plaintiff to investigate or prosecute the alleged crimes he purports to have reported, the complaint must be dismissed for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

Moreover, to the extent that Plaintiff pleads violations of other, established constitutional rights, he fails to allege a plausible factual basis for those claims. He provides no plausible basis for his belief that Defendants are engaged in a conspiracy to prevent investigation of his lost property and thwart his post-conviction relief. It is implausible that Defendants, who are law enforcement officers in this county and state, encouraged the ongoing theft of his attorney-client files, obtained subpoenas on behalf of law enforcement, refused to obtain search warrants for Plaintiff's property, instructed Plaintiff's attorney not to file motions seeking out Plaintiff's data, and instructed other defendants not to obtain search warrants for Plaintiff's property. *Id.* at 7, 16, 18, 22; *see Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim

entitling the plaintiff to relief."). Without sufficient allegations to provide some plausible context, Plaintiff's bare allegations are wholly unsupported, lack credibility and/or defy common sense. The conspiracy claim is thus speculative, and implausible.

### c. Standing

To the extent the Plaintiff sues persons or entities who can be sued in federal court there are some additional problems. The Constitution of the United States limits the jurisdiction of the federal courts to cases or controversies. U.S. Const. art III, § 2, cl. 1. Article III standing includes three elements: (1) a concrete and particularized injury that is "actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of"; and (3) a likelihood that a favorable decision will redress that injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotations omitted).

"Nowhere in the Constitution or in the federal statutes has the judicial branch been given power to monitor executive investigations before a case or controversy arises." *Jett v. Castaneda*, 578 F.2d 842, 845 (9th Cir. 1978). "[A] district court has no general supervisory jurisdiction over the course of executive investigations." *Id.* As such, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). And "a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Id.*; *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768 (2005) ("[B]enefit that a third party may receive from having someone else arrested for a crime generally does not trigger protections under the Due Process Clause."); *Parkhurst v. Tabor*, 569 F.3d 861, 866 (8th Cir. 2009) ("The lower federal courts have maintained the distinction in standing between those prosecuted by the state and those who would urge the prosecution of others, even when the failure to prosecute was allegedly discriminatory.").

Frankly, Plaintiff's complaint engages, at various points, in mutually inconsistent pleadings. For example, Plaintiff asserts in the SAC that his "Complaint does not challenge

any state court decision" while at the same time asserting that the inadequate investigation resulted in the denial of his Petition for Post-Conviction Relief and his inability to file an effective habeas petition.

To the extent that Plaintiff maintains that his "Complaint does not challenge any state court decision" he does not meet his burden of establishing standing. His complaint, in such a circumstance would not be that Defendants did something to him, but that they failed to do something to someone else—the parties who he alleges deprived him of his computers and data.[4] Yet if Plaintiff challenges Defendants' allegedly inadequate investigation because of its asserted effect on his Petition for Post-Conviction Relief and habeas petition, he has no "judicially cognizable interest in the . . . nonprosecution" of these alleged actors. *Linda R.S.*, 410 U.S. at 619. He therefore did not suffer a legally cognizable injury when Defendants chose to not investigate or prosecute the alleged theft of Plaintiff's data. *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1567 (10th Cir. 1993) ("The fact is that the only one who stands to suffer direct injury in a disciplinary proceeding is the lawyer involved. Doyle has no more standing to insert himself substantively into a license-based discipline system than he has to compel the *issuance* of a license."). Nor is Plaintiff under actual or threatened prosecution itself. The crux of his claim is that he suffered harm because of the Defendants' failure to investigate and prosecute others. And that this failure deprived him of an opportunity to bring a fruitful Petition for Post-Conviction Relief. Each Count relies on an omission from a prosecutorial or investigative authority, specifically that they failed to obtain search warrants to recover his property. Plaintiff therefore lacks standing to contest the choices of the prosecuting and investigating authorities in this case as pled. *See Ortiz v. Ortiz*, No. 119CV01416AWISAB, 2019 WL 5682832, at *5 (E.D. Cal. Nov. 1, 2019) (finding that the Plaintiff did not "have a protected interest under the due process clause to an adequate investigation" concerning his property interest in a vehicle); *Scheidler v. Avery*, No. C12-5996 RBL, 2015 WL 7294544, at *8 (W.D. Wash. Nov.

---

[4] To the extent that Plaintiff's complaint suggests a more direct harm, that Defendants' investigation and prosecution of him was inadequately informed because they failed to obtain the materials from his computer, his claim is nonetheless barred by the *Heck* Doctrine for the reasons stated below.

17, 2015).

### d. The Heck Doctrine

Nevertheless, if Plaintiff's complaint is that the Defendants engaged in an inadequate investigation which resulted in the denial of his Petition for Post-Conviction relief and his inability to bring an adequate habeas petition, his § 1983 claims are barred by the favorable termination rule. The favorable termination rule, articulated in *Heck v. Humphrey*, states that a prisoner cannot bring a § 1983 suit for damages where a judgment in their favor would necessarily imply the invalidity of the underlying conviction or sentence. If it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. 512 U.S. 477, 486–87 (1994). Thus, if a "plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." *Id.* at 487 (internal citation omitted). Accordingly, the doctrine is sensitive to the ultimate implication of an action, rather than whether a plaintiff explicitly seeks a remedy compelling release. In *Smithart v. Towery*, 79 F.3d 951, 952 (9th Cir. 1996), for example, the Ninth Circuit found that the *Heck* doctrine barred a false arrest claim that would have required a finding that there was no probable cause for a plaintiff's arrest. Yet it also concluded that *Heck* would not preclude the same plaintiff's excessive force claim "[b]ecause a successful section 1983 action for excessive force would not necessarily imply the invalidity of [plaintiff's] arrest or conviction[.]" *Id.*

To the extent that Plaintiff alleges that Defendants violated his constitutional rights by failing to investigate the theft of his property, these alleged failures are inextricably intertwined with the purported fact that Plaintiff would have had a meritorious post-conviction relief claim had he had access to the information on his computer. The claims are thus premised on the allegation that if Defendants had conducted an investigation, Plaintiff's conviction would be overturned. As such, his action is *Heck*-barred because success on Plaintiff's claims would undermine the integrity of his conviction, which has not been vacated or reversed. *Catchings v. Unknown U.S. DOJ Official*, No. 19-8623 ODW

(PVC), 2020 WL 1894157, at *3 (C.D. Cal. Mar. 16, 2020) (finding the plaintiff's claim *Heck*-barred where he alleged that a failure to investigate state officials prevented him from filing a meritorious post-conviction relief claim). In the alternative, Plaintiff's claims are also barred to the extent he asserts Defendants' investigation and prosecution of him were inadequately informed because they failed to obtain his property in their investigation. *Hoener v. Cnty. of Sonoma*, No. C 03-00566CRB, 2004 WL 1811156, at *4 (N.D. Cal. Aug. 5, 2004) (finding Plaintiff's claim that her arrest for spousal abuse was caused by a failure to investigate *Heck*-barred); *see Kemper v. Super. Ct. of Alameda Cnty.*, No. C 09-0320 JSW (PR), 2009 WL 252161, at *2 (N.D. Cal. Feb. 2, 2009).[5]

### e. Timeliness

Section 1983 does not contain a limitations period, so federal courts look to the applicable state statute of limitations to determine whether a complaint brought under § 1983 is timely. Section 1983 actions are characterized as personal injury actions for purposes of identifying the applicable statute of limitations. *Wallace v. Kato*, 549 U.S. 384, 387 (2007). In Arizona, the relevant provision is Arizona Revised Statute § 12-542, which provides for a limitations period of two years from the date the cause of action accrues. Although state law provides the statute of limitations, federal law determines when a civil rights claim accrues. *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153–54 (9th Cir. 2000). Under federal law, the time limit on a cause of action begins to run when the plaintiff "knows or has reason to know of the injury which is the basis of the action." *Trotter v. Int'l*

---

[5] The SBA Defendants sought dismissal under the related *Rooker-Feldman* Doctrine, which is designed to bar "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "To determine whether an action functions as a de facto appeal, [courts] 'pay close attention to the relief sought by the federal-court plaintiff.'" *Cooper v. Ramos*, 704 F.3d 772, 777–78 (9th Cir. 2012) (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)). The Doctrine "applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004). As Plaintiff pleads injuries stemming from Defendants' alleged misconduct rather than the State Court's, *Heck* is more applicable, and prevents Plaintiff from seeking relief which undermines his convictions. To the extent the Arizona Supreme Court has ruled on Plaintiff's civil claims, *Rooker-Feldman* is inapplicable given Plaintiff's prayer for relief does not seek relief from the state court's judgments.

*Longshoremen's & Warehousemen's Union Local 13*, 704 F.2d 1141, 1143 (9th Cir. 1983).

Plaintiff's allegations stem from Defendants' alleged obstruction of his post-conviction relief claim. As such, Plaintiff alleges he did not suffer an actual harm triggering accrual of his § 1983 claims until the state court denied his Petition for Post-Conviction relief on June 20, 2018. (Doc. 58 at 13.) Plaintiff's alleged harms, however, were reasonably known or knowable prior to the state court's denial of his petition. His claims rest not on the denial itself, but on the alleged constitutional violations which the Defendants' obstructions caused and constituted. He was aware of those alleged constitutional violations, and the inaction which established them, prior to June 20, 2018. Indeed, his SAC alleges that "[o]n January 8, 2015, Plaintiff contacted the Nordeen, Garcia, SBA, Shuman and informed each that Meyers had stolen Plaintiff's laptop and server hard drives containing Plaintiff's files and Plaintiff's 300 former clients' files." (Doc. 64 at 16.) And that "[o]n December 11, 2017, Plaintiff filed his pro se Petition for Post-Conviction Relief without the correspondence and documents necessary to comply with Ariz. R. Crim. P. 32.5(a)&(d), because Defendants would not either obtain and execute search warrants for Plaintiff's laptop server hard drive and folders upon Meyers, Singer Pistiner P.C. or Kirka, or otherwise investigate Meyers theft of Plaintiff's identity and Plaintiff's 300 former clients' identities." *Id.* at 22. He was thus aware at the time of filing that his petition was deficient because of Defendants' alleged failures to investigate and prosecute the theft of his data and client information. As such, this case was filed over two years after he was aware of the alleged constitutional violations which makeup his complaint.

### f. Plaintiff's State-Law Claims

While courts have supplemental jurisdiction over state-law claims that arise from the same nucleus of operative facts as federal question claims, courts normally decline to exercise jurisdiction over state-law claims when they dismiss the attendant federal question claims before trial. *Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985) ("Generally, dismissal of federal claims before trial dictates that the pendent state claims should also be

dismissed."). As discussed above, the Court lacks jurisdiction over Plaintiff's federal claims.

## CONCLUSION

For the reasons set forth above, Plaintiff's claims are dismissed.

**IT IS THEREFORE ORDERED** that Defendants Stacy Lynn Shuman and State Bar of Arizona's Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction (Doc. 43) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Allister Adel, David Beck, Jeffrey Duvendack, Jose Garcia, Heather L. Kirka, and Maricopa County's Motion to Dismiss the Second Amended Complaint (Doc. 66) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants Stacy Lynn Shuman and State Bar of Arizona's Motion Request for Judicial Notice (Doc. 42) is **DENIED** as **moot.**

**IT IS FURTHER ORDERED** that Defendants State of Arizona and Attorney General Mark Brnovich's Motion to Dismiss (Doc. 75) is **DENIED** as **moot.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Clarify Briefing Schedule for State Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to Local Rule 12.1 (Doc. 76.) is **DENIED** as **moot.**

**IT IS FURTHER ORDERED** directing the Clerk of the Court to dismiss the Second Amended Complaint (Doc. 64) as follows:

1. The claims against Defendants Stacy Lynn Shuman in her official capacity, the State Bar of Arizona, and the State of Arizona are dismissed with prejudice.
2. Defendant's remaining claims are dismissed with leave to amend within 30 days.

Dated this 15th day of March, 2021.

_G. Murray Snow_
G. Murray Snow
Chief United States District Judge